```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION

AMICA MUTUAL INSURANCE COMPANY,    )
                                   )
              Plaintiff,           )
                                   )
         v.                        )      No. 4:07 CV 1745 DDN
                                   )
GARY WILLARD and                   )
ELYSIA WILLARD,                    )
                                   )
              Defendants.          )
```

**MEMORANDUM AND ORDER**
**REGARDING MOTIONS TO EXCLUDE EXPERTS**

This action is before the court upon the motion of plaintiff to exclude the expert testimony of John Moyer (Doc. 45) and the motion of defendants to exclude the expert testimony of Randy Schield (Doc. 47). A hearing was held on March 9, 2009.

Plaintiff Amica Mutual Insurance Company brought this action for a declaratory judgment of its rights and those of its insureds, defendants Gary Willard and Elysia Willard, under the homeowners policy it issued on the residence of the Willards. The Willards claim payment of a fire loss under the policy due to the destruction of their residence by fire on September 15, 2006. Amica alleges ultimately that it is not liable under the policy because either or both of the Willards were responsible for the fire loss and because the Willards concealed material facts, engaged in fraudulent conduct, or made false statements about the fire. Amica also claims entitlement to recover from the Willards the amounts of money it paid to them under the policy as advance payments and living expenses, for the amount paid to the Willards' mortgage holder following the fire loss, and for its expenses in this litigation. The Willards have counterclaimed for breach of the policy and for statutory penalties for vexatious refusal to pay.

### John D. Moyer's report

In support of its motion to exclude the testimony of the Willards' expert, Amica has filed a copy of the written report of John D. Moyer, the individual retained by the Willards to provide opinions and conclusions about the dispute.

In his written report, Plaintiff's Motion Exhibit A, among other types of information, Mr. Moyer describes his personal qualifications. He describes himself as having expertise, by background and experience, in (1) insurance terminology, (2) the meaning of insurance policies like the one at issue in this action (a Commercial General Liability policy), (3) the proper review and handling of claim files, (4) insurance industry practices, procedures, customs, standards and principles regarding the handling of claims like the Willards', (5) the standard of care in the insurance industry about what constitutes fair conduct by an insurer toward its insureds and what are good faith claims-handling practices, (6) property insurance industry personnel training practices, (7) proper insurance industry supervision, coordination and management practices to assure fair handling of claims, and (8) what constitutes bad faith claim handling.

His report sets forth a description of the policy and other documents he reviewed, his recounting of the history of how Amica handled the defendants' claim, statements of his opinions about the manner in which Amica handled the defendants' claims, a description of the "Generally Accepted Insurance Industry Customs and Practices," and a list of the following nine conclusions he came to about Amica's handling of the defendants' claims:

1. . . . . I do not know if Amica actually does have standards or if they do whether or not the standards are consistent with the usual and customary practices of the insurance industry.

2. Amica claims handlers concealed from Mr. and Mrs. Willard that they were investigating questions concerning the applicability of coverage under the policy.

3. Amica claims handlers testified in deposition that they were not fully aware of the Missouri Unfair Claims Settlement Practices statute or of the NAIC Model Unfair Claims Settlement Practices Act.

4. Amica claims handlers did not promptly commence an unbiased and objective investigation of the claim. The facts demonstrate that Amica claims handlers geared their investigation, from the original receipt of notice of claim, toward proving that the Willard's had intentionally set fire to their home. After their

intensive effort failed to develop solid proof of arson Amica denied coverage based upon suspicion.

5. Amica claims handlers unreasonably delayed the payment of claims made by Mr. and Mrs. Willard by requiring both a formal proof of loss form and a detailed verified inventory and subsequent verification that resulted in duplication of information and verification appearing in the formal proof of loss form. Furthermore, they continually questioned many items on the verified inventory even after their independent adjuster, Chris Powers, had written that he had verified that all of the contents listed on the inventory, and later the proof of loss, were in the house.

6. Amica claims handlers did not consider all available information when they made their decision to deny coverage based upon arson by Mr. and Mrs. Willard. The initial report of their cause and origin expert did not rule out an accidental fire, and Amica never followed up to determine what the cause and origin expert meant by "human involvement."

7. Amica did not conclude the investigation as promptly as possible and did not make a fair and unbiased evaluation of the coverage and damages aspects of the claim(s). The facts support that Amica determined the result that they wanted and pushed their investigation in the direction they felt would achieve the result they desired. There is not adequate evidence to support that the insured intentionally set his house on fire. The denial of coverage by Amica is a biased view of gossip and hearsay mixed with their suspicions. Furthermore, it took Amica more than a year to finalize their conclusion that the fire was arson.

8. Amica did nothing to protect the financial interests of their insureds.

9. Amica has, in effect, accused Mr. Willard of arson in their declaratory judgment action. Amica has also accused Mr. and Mrs. Willard of fraud by misrepresenting material facts regarding their claims. Based upon the allegations made by Amica, their SIU they should have supplied the appropriate criminal legal authorities with any and all evidence they have that supports that Mr. Willard committed arson. This was not done.

(Doc. 46, Ex. A, at 21-23.)

## Randy Schield's report

In support of their motion to exclude the testimony of Randy Schield, Amica's proffered expert, defendants have filed a copy of his written report, captioned "Origin and Cause Report," Defendant's Motion Exhibit A. In an introductory part of his report, Mr. Schield expresses these opinions:

> The origin and cause examination revealed the fire originated along the west wall of the living room at an end table and portion of the sectional couch.
>
> The cause of the fire is the result [of] human involvement. The candle was the only ignition source located in the origin area and combustibles would have had to come in contact with the flame at some point to cause the fire.

(Doc. 48, Ex. A, at 5.) His report describes the facts he learned during his investigation of the Willards' claims, including the fire scene, the point of origin, and the cause of the fire. Attached to the report are documents that are referenced in the report.

On January 23, 2009, Amica filed Mr. Schield's supplemental report in which he stated:

> After my examination of the fire scene was complete and all information was reviewed, I have concluded that this was an incendiary fire caused by the intentional application of an open flame to combustible materials with ignition occurring.

(Doc. 48, Rule 26(a)(2)(B) Report of Randy Schield, at 1.)

At the hearing, Amica stated that Mr. Schield would be called to testify that Amica followed the NFPA-921 guidelines regarding its investigation of the Willards' claims, that the origin of the fire was a candle on the coffee table near the couch, that the electrical outlet near the coffee table did not cause the fire, about the burn patterns on the couch, that the candle did not accidentally cause the fire, that there was no pet animal in the house, that there was no fan on, that the Willards were not in the house at the time of the fire, that the house was locked and secured when the fire department arrived, that only the Willards had a key to the home, and that the fire was intentionally ignited by human activity.

## Discussion

In their pending motions each side argues that the expert witness of the other should not be allowed to testify in this action, because his testimony does not meet the requirements of Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

Many different kinds of experts and expertise are recognized for evidentiary purposes in federal courts. <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 150 (1999). Rule 702 allows a witness, who qualifies as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise about scientific, technical, or other specialized knowledge. <u>See</u> Fed. R. Evid. 702.

However, not all expert testimony is admissible. The trial court must act as a gatekeeper, measuring the admissibility of the expert and his testimony. The proponent of the expert testimony must show that the testimony is reliable and would be helpful to the finder of fact, and that the expert is qualified to be a witness under Rule 702. <u>Storie v. Duckett Truck Ctr., Inc.</u>, No. 4:06 CV 1238 DDN, 2007 WL 4454297, at *2 (E.D. Mo. Dec. 14, 2007).

In the case at bar, generally, John D. Moyer would testify about whether Amica handled the Willards' insurance claims according to the standards and practices of the insurance industry and whether Amica acted reasonably in processing and deciding their claim. Generally, insurance industry standards can be an area of expertise that is admissible in a case such as this. <u>Cedar Hill Hardware and Constr. Supply, Inc. v. Ins. Corp. of Hannover</u>, 563 F.3d 329, 343-45 (8th Cir. 2009); <u>cf.</u> <u>Brawner v. Allstate Indem. Co.</u>, No. 4:07 CV 482 GTE, 2008 WL 167257, at *1-2 (E.D. Ark. Jan. 16, 2008).

On the other side of the case, generally, Randy Schield would testify to the cause and origin of the fire, and that, too, can be admitted in the form of expert opinion testimony. <u>Hickerson v. Pride Mobility Prods. Corp.</u>, 470 F.3d 1252, 1257-58 (8th Cir. 2006); <u>Estate of Groff v. Aquila, Inc.</u>, No. 4:05 CV 250 JAJ, 2007 WL 4644707 (S.D. Iowa Sept. 28, 2007); <u>cf.</u> <u>State Farm Fire and Cas. Co. v. Holmes Prods.</u>, 165 F. App'x. 182, 187 (3d Cir. 2006).

Neither party challenges the personal educational, training, or experience qualifications of the other's expert to testify generally in the respective areas of expertise the court has described. However, they challenge the opposing experts on other grounds. Indeed, the court must determine whether or not the items of testimony, indicated by the record, that the experts would testify to (1) are based upon sufficient facts or data, (2) are the result of reliable principles and methodology, and (3) the witness has reliably applied the principles and methods to the facts. <u>Storie</u>, 2007 WL 4454297, at *2. The expert must explain how he developed his opinions. <u>Id.</u> at *3.

Furthermore, an expert's opinion is subject to being rejected, if it is substantially based not upon knowledge but upon the expert's subjective belief or unsupported speculation. <u>Daubert</u>, 509 U.S. at 590; <u>Estate of Groff</u>, 2007 WL 4644707, at *3. And, if the facts or data upon which the expert bases his opinion are of a type

> reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Finally,

> "[a]lthough expert opinion embracing an ultimate issue is permissible under Federal Rule of Evidence 704(a), 'courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion.'" . . . "{E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation. . . ."

<u>Brawner</u>, 2008 WL 167257, at *2 (citations omitted).

-6-

## Amica's arguments

Amica argues that Mr. Moyer's expert opinions are not based upon legally sufficient facts. More specifically it argues that his opinion that Amica unreasonably denied coverage to the Willards is based at least in part upon his statement that Mr. Schield's report stated that the fire that burned their residence was, inconclusively, either accidental or intentional. Such a statement by Mr. Moyer can be found in his deposition and it follows his deposition statement that he had just read Mr. Schield's report the day of his deposition. (Doc. 46, Moyer Depo. at 37.) Whether or not Mr. Moyer misread Mr. Schield's report may be a matter for cross-examination at trial.

Amica argues that Mr. Moyer incorrectly stated that Amica failed to find out what Mr. Schield meant when he reported that the fire was the result of "human involvement." Amica argues that its Mr. Nguyen conversed with Mr. Schields about his report and that Schield said he thought the Willards intentionally caused the fire. (Doc. 86, Ex. C at 84.) Again, this may be a matter for cross-examination.

Amica argues that Mr. Moyer incorrectly stated that Amica never contacted the High Ridge Fire Department to follow up on its report that the fire was "unintentional." Amica argues that Mr. Schield testified that he contacted the fire department and received an explanation for the use of "unintentional" in its report. (Doc. 86, Ex. C at 76-77, 86-89.) Again, this may be a matter for cross-examination.

Amica argues that Mr. Moyer wrongly criticized it for not reporting the alleged fraud to governmental authorities, arguing that in fact it reported the matter to the Missouri Department of Insurance.

These arguments by Amica go to the probity of Mr. Moyer's opinions because of their factual underpinnings. They do not disqualify Mr. Moyer from testifying as an expert.

At the hearing, Amica argued that Mr. Moyer should not be allowed to testify that it unreasonably delayed the processing of the claim. This goes to the heart of the Willards' counterclaim against Amica and which the court concludes is an appropriate subject of Mr. Moyer's expertise.

Amica argues that Mr. Moyer should not be allowed to testify that

Amica lied to the Willards and that a suspicion of arson is an insufficient basis for denying the Willards' claim.  The court agrees that the first of these opinions is speculative and a subjective response by Mr. Moyer to the facts that he observed in the record.  The jury will not need Mr. Moyer's subjective testimony in this regard and, thus, he will not be allowed to so testify.  His opinion that a suspicion of arson is not a sufficient basis for denying the claim is at ground a legal conclusion that may be the appropriate topic of an instruction.  Mr. Moyer will not be allowed to so testify.

Amica also argues that Mr. Moyer would testify that it did not follow the rules prescribed by state law, that it became biased against the Willards soon after they submitted their claims, and that Amica should not have taken a sworn statement from the Willards.  These are matters within Mr. Moyer's expertise with the insurance industry standards and practices and he will be allowed to so testify.

Mr. Moyer may describe for the jury the insurance industry standards for investigating whether an insured is responsible for a fire.  These standards include governmental and non-governmental standards.  He may testify about the chronological progress and the actions of Amica in reaching its decision not to pay the Willards' claims.  He may not testify in a fashion that characterizes the state of mind of the persons who acted for Amica.  That is, he may not testify that Amica "concealed" from the Willards its investigation of its questions about coverage, that Amica did not promptly begin an "unbiased and objective investigation of the claim," that Amica denied coverage based upon "suspicion," or that Amica "unreasonably delayed" the Willards' claims.

### Willards' arguments

The Willards argue that Mr. Schield should not be allowed to testify, because his opinions are speculative, unreliable, and do not meet the <u>Daubert</u> standards.

More specifically, the Willards point out in their memorandum filed in support of the motion, that Mr. Schield testified during his deposition that, after eliminating the possible accidental causes of the

fire that were apparent in the circumstances of the fire, he ultimately gave his opinion that the fire was caused by human activity. (Doc. 48, Ex. A, at 70-93.)

At the hearing, the Willards argued that the opinion of Mr. Schield that the fire was incendiary in nature is inadmissible because it is based upon an unscientific test (not compliant with NFPA 931), hearsay gossip from the neighborhood of the residence, Internet research at the website of the U.S. Consumer Product Safety Commission involving the Hazard Report on Candle-Related Incidents, and later information from the fire department that responded to the fire. The Willards argue that relevant statistics indicate that only 4% of residential structure fires involving candles are caused by arson.

In this case, Amica alleges that the Willards are responsible for the fire that burned their residence and that this is an exclusion from coverage under the policy. Amica bears the burden of proving this proposition by a preponderance of the evidence. Artilla Cove Resort, Inc. v. Hartley, 72 S.W.3d 291, 296 (Mo. Ct. App. 2002). The record demonstrates that this defense is based upon circumstantial evidence of the results of Mr. Schield's investigation and his findings. Ultimately, he rendered an opinion that the fire was human caused, because he has eliminated all other reasonably possible causes of the fire. The record indicates that the nature of Mr. Schield's investigation of the fire scene and circumstances for the cause and origin of the fire was generally consistent with approved methodology. Hickerson v. Pride Mobility Prods. Corp., 470 F.3d 1252, 1257 (8th Cir. 2006).

Nevertheless, Mr. Shield's conclusion that the fire was intentionally set by a human is based upon his speculation, in effect, that a human cause is the reason there is no direct evidence of how the fire began. The court concludes the jury does not need the final opinion of Mr. Schield to decide whether or not a human being intentionally caused the fire. That is a determination the jury would be fully able to make or reject without the help of an expert witness. Therefore, the objection to such testimony as proof of this fact is sustained.

However, the Willards have alleged that Amica acted vexatiously and it should pay them the statutory penalties prescribed by law. To prove that Amica acted vexatiously, the Willards must prove, besides the existence of the policy sued upon and Amica's admitted refusal to pay, that Amica's refusal was without reasonable cause or excuse. Dhyne v. State Farm Fire and Cas. Co., 188 S.W.3d 454, 457 (Mo. 2006); Columbia Mut. Ins. Co. v. Long, 258 S.W.3d 469, 477 (Mo. Ct. App. 2008). "[C]laims of vexatious refusal to pay arise in innumerable contexts. Thus, direct and specific evidence of vexatious refusal is not required and 'the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case." Dhyne, 188 S.W.3d at 458 (citation omitted). The relevant facts about the reasonableness of Amica's actions on the Willards' claims include Amica's consideration, if any, of whether the fire was intentionally set.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of plaintiff Amica Mutual Insurance Company to exclude the expert testimony of John Moyer (Doc. 45) is granted in part, and otherwise denied.

**IT IS FURTHER ORDERED** that the motion of defendants Gary Willard and Elysia Willard to exclude the expert testimony of Randy Schield (Doc. 47) is granted in part, and otherwise denied.

      /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 14, 2009.